UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ST. VINCENT DE PAUL PLACE, NORWICH, INC. and THE ST. JOSEPH'S POLISH ROMAN CATHOLIC CONGREGATION | : : : : | |
| | : | CIVIL NO. |
| | : | |
| Plaintiffs, | : | |
| V. | : | |
| | : | |
| THE CITY OF NORWICH, THE CITY OF NORWICH COMMISSION ON THE CITY PLAN, JAMES TROEGER, in his official capacity as Building-Housing Code Enforcement Official, and JAMES ROBERTS, in his official capacity as Captain of the Fire Marshal's Office | : : : : : : : | JANUARY 4, 2013 |
| | : | |
| Defendants. | : | |

## VERIFIED COMPLAINT

Plaintiffs St. Vincent de Paul Place, Norwich, Inc. ("St. Vincent") and The St. Joseph's

Polish Roman Catholic Congregation (the "Church"), by its undersigned attorneys for its

Complaint against City of Norwich (the "City"), City of Norwich Commission on the City Plan

(the "Commission"), James Troeger ("Troeger"), in his official capacity as Building-Housing

Code Enforcement Official, and James Roberts ("Roberts"), in his official capacity as Captain of

the Fire Marshal's Office (collectively, the "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      This action is brought by Plaintiffs to redress violations of their civil rights, as

protected by the United States Constitution and 42 U.S.C. § 1983, the Religious Land Use and

12019016-v4

Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"), the Connecticut

Constitution, and Connecticut's Religious Freedom Act, § 52-571b, caused by Defendants'

substantially burdensome, discriminatory and unreasonable land use regulations and intentional

conduct that has prohibited and continues to prohibit Plaintiffs from the free exercise of their

religion.

2.      Plaintiffs allege that the Commission's denial of St. Vincent's special permit

application – which satisfied all applicable criteria under the zoning regulations – was based on a

misapplication of state and local laws, ad hoc factors specifically and specially designed to

prevent the operation of St. Vincent from its desired location, known as 120 Cliff Street a/k/a 1

Clairmont Avenue, and unequal treatment as compared to similarly situated places of worship

and nonreligious assemblies in the City, including in the same area and even the same zoning

district as St. Vincent's location.

3.      Plaintiffs further allege that in denying St. Vincent's special permit application,

the Commission bowed to the pressure of the baseless complaints of neighborhood opponents,

and improperly credited their anecdotal testimony at the public hearing on St. Vincent's special

permit application over expert testimony and evidence submitted by or on behalf of St. Vincent.

4.      Plaintiffs also allege that application by the Commission of unwritten, ad hoc, and

novel "standards" that appear nowhere in the zoning regulations to deny St. Vincent's special

permit constitutes a prior restraint on Plaintiffs' protected First Amendment activity, does not

provide reasonable notice to Plaintiffs' in St. Vincent's special permit application of whether

proposed religious and eleemosynary uses meet the special permit standards, and is therefore

vague and allows for unbridled discretion, as applied, on the part of the Commission.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because

this action is brought under 42 U.S.C. § 2000cc *et seq.* and 42 U.S.C. § 1983.  This Court also

has supplemental jurisdiction of Count VII and Count VIII under 28 U.S.C. § 11367(a) for

claims brought under Connecticut statutes.

6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the

underlying events occurred in this district, and Defendants are subject to personal jurisdiction in

this district as of the commencement of this action.

## PARTIES

7.    Plaintiff St. Vincent is a non-profit corporation existing under the laws of the

State of Connecticut, with its principal place of business at 10 Railroad Place, Norwich,

Connecticut.  St. Vincent is a ministry of the Diocese.  It was established in 1979 and

incorporated in 1989.

8.    Plaintiff Church is a non-profit corporation, incorporated in 1904, existing under

the laws of the State of Connecticut, with its principal place of business at 120 Cliff Street,

Norwich, Connecticut.  It is a parish of the Roman Catholic Diocese of the City of Norwich (the

"Diocese").

9.    St. Vincent and the Church are entities under the Diocese.

10.    Defendant City of Norwich is a municipality located in the State of Connecticut

established pursuant to Special Acts 1951, No. 573, which act constituted the Norwich city

charter (the "City Charter").  At all times relevant hereto, the City was and is responsible for the

establishment, enforcement, and implementation of land use and zoning regulations within the City.

11.     Defendant Commission is a zoning commission authorized by Chapter XV, Sec. 1 of the City Charter.  The Commission consists of five regular members and three alternates appointed by the City Council.

12.     Defendant Troeger is the City's Building-Housing Code Enforcement Official and is authorized to enforce, among other things, provisions of the State Building Code.  He is sued herein in his official capacity.

13.     Defendant Roberts is the City's Captain of the Fire Marshal's Office and is authorized to enforce, among other things, provisions of the State Fire Code.  He is sued herein in his official capacity.

## FACTUAL ALLEGATIONS

### St. Vincent de Paul Place, Norwich, Inc. and
### The St. Joseph's Polish Roman Catholic Congregation

14.     The Church has been located at 120 Cliff Street since 1904.  The Church has therefore contributed to the character of the neighborhood for more than a century.

15.     For decades, the Church has aided the homeless and poor in the greater Norwich area.  During World War I and the Great Depression, the Church held collections for the needy, orphans, unemployed, the hospital, those affected by floods in 1928, and charitable institutions.  Sisters of the Church prepared meals for poor children.  In 1934, the Sisters provided these meals to fifty-six poor children.  The Sisters also provided financial assistance and shelter to those in need.

- 4 -

16.    In 1908, the Diocese established St. Joseph School (the "School"), a religious elementary school dedicated to providing a religious education to its students. By 1925, the Diocese constructed a building to be used by the School. The School building is located at 120 Cliff Street a/k/a 1 Clairmont Avenue in a building separate from but adjacent to the Church building. Between the School building and Church building is a forty-six (46) car parking lot. The School closed in 2010. The Church building and School building are located in the Multifamily Residence District (the "MF District").

17.    In 1979, the City adopted a resolution to honor the Church for its then seventy-five years of providing "effective force in enriching community life through its religious, cultural, educations and social programs."

18.    In 1979, continuing its tradition of serving the homeless and poor, the Diocese established St. Vincent as a ministry of the Diocese to offer a variety of services to the homeless, poor, and others in need of assistance in the greater Norwich area.

19.    As a ministry of the Diocese, the services and programs offered by St. Vincent is a form of religious exercise that is central to the faith of the Diocese and the Church.

20.    St. Vincent is a welcoming community that strives to provide food, companionship, and advocacy for anyone in need, regardless of race or religion. St. Vincent serves anyone who walks through its doors. Patrons include the unemployed, working poor, underemployed, disabled, homeless, veterans, children, senior citizens, persons newly released from institutions, and residents of recovery houses.

21.    The overwhelming majority of St. Vincent's patrons do not have access to automobiles or

other forms of transportation and thus walk by foot to St. Vincent to receive services. For this reason, it is critically important that St. Vincent remain within walking distance of the Downtown Norwich area so that its patrons continue to have access to its services and programs.

22.    Many of St. Vincent's patrons are residents of the Cliff Street neighborhood and its surrounding neighborhoods.

23.    St. Vincent serves breakfast and lunch to its patrons through its soup kitchen Monday through Saturday. Breakfast is served at 8:00 a.m. and is available until 10:00 a.m. Lunch is served at 11:30 a.m.. and is available until 1:00 p.m. Members of the clergy and others lead prayer each day before meals. Over the past five years, St. Vincent, on average, has served 79,362 meals each year.

24.    St. Vincent, through its food pantry program, distributes food bags to households to take to their homes for consumption three days per week: Monday, Wednesday, and Saturday. The food pantry is open on Monday and Wednesday from 1:30 p.m. until 3:30 p.m. and on Saturday from 9:00 a.m. until 11:00 a.m. Over the past five years, St. Vincent, on average, has had 7,104 visits to its food pantry each year. On average, during the past five years, 1,148 children under the age of eighteen years are members of the households visiting the food pantry. Patrons may pick up food items from the food pantry once per week.

25.    St. Vincent receives much of the food its serves through its soup kitchen and food pantry programs from the United States Department of Agriculture ("USDA") and FEMA.

26.    In addition to feeding the homeless and poor, St. Vincent provides a variety of other services. St. Vincent provides shower services on Monday through Saturday from 8:00 a.m. until 11:00 a.m. Approximately eight to twelve patrons use the shower facilities each day.

This shower is the only publicly available shower in the City. In addition, St. Vincent also connects patrons with medical services to help stabilize or improve their health by hosting a weekly mobile medical unit, and has a case worker on-staff to provide patrons with information concerning job openings, apartments rentals, and community events, among other things.

27.    St. Vincent delivers meals to residents of the City's No Freeze Shelter. The No Freeze Shelter is operated by the City from November 1 to April 1 and is intended to prevent chronically homeless single adults from freezing during the winter months. The shelter is open from 7:30 p.m. each evening until 7:00 a.m. the following morning. Patrons of the shelter have food delivered to them by St. Vincent. They do not come to Cliff Street to eat evening meals there. St. Vincent and the No Freeze Shelter work together in harmony – when one is closed the other is open. Without St. Vincent, patrons of the City's No Freeze Shelter would be without evening meals, the use of the only public shower facility in the City, and a place to stay when the shelter is closed.

28.    St. Vincent is closed on Sunday. To provide St. Vincent with this day of rest, other religious organizations in the City take turns providing meals to the homeless and low-income families, many of whom are patrons of St. Vincent.

29.    From approximately 2000 until 2012, St. Vincent leased a building in Downtown Norwich, located at 10 Railroad Place, where it provided these services. St. Vincent's second of five one-year lease options expires in April 2013.

30.    On July 5, 2012, St. Vincent's landlord informed it of serious structural issues with the building at 10 Railroad Place. The landlord informed St. Vincent that the building would need to undergo extensive renovations to address these problems.

31.     Because of the safety concerns related to the structural issues of the building at 10
Railroad Place leased by St. Vincent, St. Vincent has been constructively evicted from its lease
of the building and vacated 10 Railroad Place on July 7, 2012.

## The Subject Property

32.     Uses such as St. Vincent are subject to special permit requirements throughout the
City and subject to discretionary review.

33.     Moving to the former school building was not only the most logical option for St.
Vincent, but it was the only feasible option allowing St. Vincent to provide food to its patrons
and fulfill its mission.

34.     In 2009, with rising costs amidst the struggling economy, St. Vincent began
working with a realtor to find a property in which it could permanently locate, and it examined
several properties.  Despite these efforts, St. Vincent has been unable to find a property that
would provide a ready and feasible alternative for it to locate and continue to serve the homeless,
poor, and needy of the greater Norwich area.  In particular, exorbitant costs, environmental and
contamination concerns, the need for extensive, time-consuming, and costly repairs and
renovations, and the distance from Downtown Norwich, among other things, have ruled out each
of these properties as ready and feasible alternatives.

35.     The Church building is not a feasible alternative because extensive, costly, and
time-consuming renovations would be required.

36.     St. Vincent also is unable to return to 10 Railroad Place.  Renovations to repair
the serious structural issues with the building have not been completed and the building is
currently without a floor.  There is no timetable for its completion, and the landlord has not

informed St. Vincent when the building will be ready for occupancy. St. Vincent's lease of that property is set to expire in April 2013. In addition, the landlord of that property has demanded that St. Vincent sign a long-term lease agreement at exorbitant and unaffordable costs. The landlord informed St. Vincent that if it wished to return to the building, St. Vincent would have to lease the entire building. It previously operated out of one of the two suites in the building.

37.    With no other options and hundreds of patrons to serve, St. Vincent sought to relocate to the building at 120 Cliff Street a/k/a 1 Clairmont Avenue formerly operated by the Diocese as a religious School (the "Property"). This building is only one-half-of-a-mile from the building at 10 Railroad Place that had been leased by St. Vincent. Because the majority of St. Vincent's patrons do not have access to automobiles and thus walk to St. Vincent, the proximity of the School building to the 10 Railroad Place building was necessary for the success of any such move. Because many of St. Vincent's patrons live on Cliff Street and other surrounding neighborhoods, this location provides them with ready access to St. Vincent's services.

38.    At its peak in 1992, 300 students were enrolled at the School, with twenty (20) staff members. The school's enrollment declined to a low of approximately ninety (90) students and sixteen (16) staff members in 2010. In 2010, the School closed due to financial issues related to its declining enrollment.

39.    The School operated Monday through Friday. Teachers arrived between 7:00 and 7:30 a.m. and classes began at 8:00 a.m. The School served breakfast and lunch to its students. Recess was a daily activity held in the parking lot supervised by teachers. Students would leave at 2:30 p.m. Teachers often remained for after-school functions and evening programs.

40.    For the past ten years, the Church holds its Lenten fish fry in the basement of the School building, with approximately two-hundred people attending each week. The Church also holds parish coffee hour in the basement of the School building after the 8:45 a.m. and 10:30 a.m. masses on the first Sunday of each month. In addition, various Church meetings are held in the School building. These activities continue to the present day.

41.    On July 9, 2012 St. Vincent received a temporary zoning permit from the City, signed by Peter Davis, authorizing St. Vincent to occupy the Property for six-months. The temporary permit states that St. Vincent must apply for a special permit to remain at the Property after the temporary permit expires. On July 11, 2012, Jillian Corbin Executive Director of St. Vincent, wrote to Chief Kenneth Scandariato, City of Norwich Fire Department, Office of the Fire Marshal, in reply to his request for a letter of intent regarding St. Vincent's temporary operation at the Property. On July 13, 2012, St. Vincent received a temporary certificate of occupancy from the City's Department of Planning & Development Building Inspection Division, signed by Troeger, to occupy the building at the Property for six-months. That temporary certificate of occupancy notes that an accessibility modification must be made to allow access to the pantry area. Troeger's letter references an August 6, 2012 letter from Daniel Tierney, Deputy State Building Inspector to approve an accessibility exemption for St. Vincent. (Letters attached hereto as Exhibit A).

42.    Having obtained a temporary six-month variance to operate from the School building, St. Vincent went out of its way to be sensitive to its neighbors. Each day, St. Vincent inspects its property and property throughout the neighborhood and removes any trash it finds,

regardless of whether the trash has been generated by its patrons or residents of the neighborhood.

43.    The Cliff Street neighborhood is home to other non-residential uses, including other community service programs are located on the Cliff Street.  The Katie Blair House, operated by Bethsaida Community, Inc. is adjacent to the Church and the School.  It provides supportive living and behavioral services to women striving to become independent members of the community.  Bethsaida Community, Inc. rents the former convent of St. Joseph at 117 Cliff Street.  Its offices are on the first floor of this building, and the second floor of the building, called Patricia's Place, provides additional house to its clients.  Reliance House, Inc., based on the nearby Broadway Street, operates it Outreach to Homeless Programs in Cliff Street to provide, among other things, shelter, food, and clothing to those in need.

44.    The Gagne Funeral Home is located in the same neighborhood at 82 Cliff Street.  As a funeral home, it frequently hosts large religious assemblies for funeral services.  It further defines the religious character of the Cliff Street neighborhood.

### The Applicable Land Use Regulations and Special Permit Application

45.    After receipt of the temporary approvals, St. Vincent, with the aid of a realtor, continued to explore alternative properties from where it could operate.  Like before, exorbitant costs, the need for extensive, time-consuming, and expensive repairs and renovations, environmental and contamination issues, and distance from Downtown Norwich precluded each of these properties from being ready and feasible alternatives.

46.    On September 14, 2012, with no other options, Jillian Corbin submitted an application on behalf of St. Vincent for a special permit to locate permanently at the School

pursuant to § 8.1.2(b), which sets forth those uses that are specially permitted in the MF District (SP # 12-03) (the "Application"). St. Vincent also applied for a site plan waiver pursuant to § 17.1.11 of Appendix A (Zoning) to the Norwich Code of Ordinances (the "Zoning Regulations").

47.    The Application did not propose any exterior changes or renovations to the School building. The only planned interior renovation was the installation of an elevator to provide handicap access, as required by the State of Connecticut to remain at the Property. She was advised that the installation of the elevator and related construction would cost up to $125,000.

48.    Section 8.3.2 of the Zoning Regulations allows the following uses by special permit in the MF District: "Philanthropic, educational, educations, recreational, religious and eleemosynary use by a duly incorporated nonprofit body or government unit." The Zoning Regulations do not define these terms.

49.    Section 17.2.3 of the Zoning Regulations governs the criteria for the granting of a special permit. It provides in part that the Commission must determine that the use will be: (1) "harmonious to the surrounding neighborhood"; and (2) "that it will not negatively impact the character of the area or diminish the quality of life."

50.    Pursuant to § 17.2.3(a), the commission shall also review the following criteria for granting a special permit:

     a.  *Character.* The nature, location, size, intensity and site layout of the use shall be such that it will be in harmony with the appropriate and orderly development of the area in which the use is situated and that its operations will not be detrimental by reason of dust, noise, odor, fumes, explosion, glare, drainage, or sewage problems. In addition, the appearance of any structures constructed shall physically and architecturally complement the neighborhood in which the property is located as deemed by the commission.

    b.  *Traffic.*  The proposed traffic ways are adequate to accommodate any increase in traffic, that any such increase in traffic will not detrimentally impact the character of the area or conflict with the normal traffic within the neighborhood and the use will not cause or detrimentally impact safe vehicular and pedestrian traffic conditions.

    c.  *Future development.*  The location and height of buildings, the location and nature and height of walls and fences, and the nature and extent of landscaping on the site shall be such that the use will not hinder or discourage the appropriate development and use of adjacent land and buildings or impair the value thereof.

    d.  *Additional requirements.*  In addition to the criteria noted above, criteria may be noted under the specific special permitted uses. Such criteria shall be considered as part of this section.

51.    The special permit standards set forth in § 17.2.3(a) allow the Commission to make individualized assessments of all applications for special permits. Moreover, the inherently subjective standards of § 17.2.3(a) give the Commission broad discretion over any decision on St. Vincent's special permit application.

52.    The Commission may approve a special permit application with conditions.

### Neighborhood Opposition

53.    Residents of the Cliff Street neighborhood organized a fierce opposition to theApplication, distributing leaflets throughout the neighborhood following Church mass to "stop this madness" of St. Vincent permanently providing its services and programs from the former School building.

54.    The public hearing on St. Vincent's special permit application took place over multiple evenings, opening on October 16, 2012 and concluding on November 20, 2012.

55.    St. Vincent repeatedly raised its right to the free exercise of religion, as protected by the United States and Connecticut constitutions, RLUIPA, and the Connecticut Religious Freedom Act, at the public hearing before the Commission.  Members of St. Vincent, the Diocese, and other institutions testified and submitted evidence that the operation of St. Vincent constitutes a religious use.

56.    At the public hearing, St. Vincent submitted testimony and evidence, including from experts, that St. Vincent's use of the Property is harmonious with the character of the neighborhood and is less intense of a use than the School's use there just two years prior.

57.    At the public hearing, Reverend Tadeusz Zadorozny, the administrator of the Church, testified about the Church's one hundred-plus year history in the Cliff Street neighborhood, including the many charitable services provided throughout the years, such as serving meals to poor children.

58.    At the public hearing, Jillian Corbin, executive director of St. Vincent, testified that several residents of Cliff Street and other surrounding neighborhoods attend St. Vincent to receive services.

59.    At the public hearing, Robert Mercer of Mercer & Bertsche Architecture and Engineering, an experienced architect, testified that St. Vincent's proposed use of the Property is in harmony and consistent with the religious character that has defined the Cliff Street neighborhood for more than a century, and that St. Vincent is a self-contained campus that is operated by a few paid personnel and other volunteers.  At the public hearing, Mr. Mercer testified to the parallels between the operation of St. Vincent and the School, including the serving of meals and hours of operation.  At the public hearing, Mr. Mercer also testified that the

proposed use of the Property by St. Vincent is less intense of a use than the former religious

school use previously operated there.  Unlike the previous school use, however, there are no

longer school buses and other automobiles coming and going to transport the students, and there

are no longer students playing outside in the parking lot during recess.  Additionally, St.

Vincent's staff is smaller than that which had been at the School.  Mr. Mercer testified that, after

a detailed review of the traffic associated with the proposed and current use of the Property and

the present conditions existing in the surrounding neighborhood, St. Vincent's use of the

Property will result in a reduction of traffic compared to traffic generated by the School just two

years prior.

    60.    At the public hearing, St. Vincent offered testimony and evidence that its

proposed use of the Property is also consistent with the other social and charitable services such

as the Katie Blair House, Patricia's Place, and Reliance House, Inc. that define the character of

the Cliff Street neighborhood.

    61.    At the public hearing, St. Vincent submitted the approved City of Norwich Public

Safety Committee Minutes of the September 12, 2012.  The minutes detail the testimony of

Sergeant Peter Camp of City of Norwich Police Department.  Sergeant Camp testified that he

had evidence that there has been no uptick in crime in or around the Cliff Street neighborhood

since St. Vincent moved there.  Sergeant Camp stated that a garbage complaint had actually been

caused by a resident in the neighborhood and not by a St. Vincent patron.  Sergeant Camp added

that St. Vincent's patrons are behaving "better because they are in a neighborhood.  It is as

though they are trying to respect the neighbors."

62.     Nevertheless, several neighborhood opponents provided anecdotal, lay, and unconfirmed testimony that St. Vincent's use of the Property is not harmonious with the character of the neighborhood.

63.     Expert and other evidence provided by or on behalf of St. Vincent contradicts the anecdotal, lay, and unconfirmed testimony of the neighbors.

64.     Upon information and belief, no neighbor who spoke in opposition to the Application submitted personal resumes or C.V.'s or other information that demonstrates specific technical skill, expertise, or training concerning any of the special permit criteria.

65.     The Commission received no expert evidence to oppose the Application.

66.     On December 18, 2012, one week before the Christmas holiday, the Commission convened its regularly scheduled session.

67.     The Commission then denied the Application by a vote of 5-0 (the "Decision"). Although members of the Commission commented on several of the special permit criteria, they collectively denied that St. Vincent's special permit application by finding that the use of the Property is not consistent with the character of the neighborhood.  The Commission made no finding as to any of the other special permit criteria.

68.     In denying the Application, the Commission arbitrarily and capriciously credited the anecdotal and lay testimony of the neighbors and others over expert and other testimony and evidence offered by or on behalf of St. Vincent.

69.     The Commission could have approved the Application with modifications or conditions, but chose not to do so.  The Decision is therefore absolute and there is no reasonable

opportunity for St. Vincent to submit a modified special permit application to operate at the Property.

70.    On the same evening, the Commission approved at least one other application, but arbitrarily denied the Application.

71.    Legal notice of the Commission's denial of the Application was published on December 21, 2012 in *Norwich Bulletin*.

72.    On December 31, 2012, St. Vincent received a notice of denial from the Commission.  The notice of denial is dated December 20, 2012, eleven days prior to the date St. Vincent received it.  The notice of denial states that the Commission denied the Application based on its finding that "[c]hange of use is not harmonious with a residential neighborhood."

**Discrimination Against St. Vincent de Paul Place, Norwich, Inc.**

73.    Upon information and belief, Defendants routinely permit other religious institutions to conduct similar activities as St. Vincent, including institutions in the very same MF District.

74.    Through the Decision and other actions, Defendants are implementing their land use laws and regulations in a way that treats St. Vincent on less than equal terms with religious institutions that engage in practices similar to those of St. Vincent.  Defendants have also irrationally singled out Plaintiffs by treating them more harshly than they treat these similarly situated religious institution which provide meals and other charitable services to the needy of Norwich.

75.     Several religious organizations in the City provide on-site meals and groceries through food pantry programs to the homeless, poor, and needy of Norwich. Several religious organizations take turns providing free meals on Sunday to afford St. Vincent a day of rest.

76.     Upon information and belief, St. Mark Lutheran Church, located at 248 Broadway in the MF District, the same district as St. Vincent, provides lunch to the homeless, poor and needy.

77.     Upon information and belief, the Central Baptist Church located at 2 Union Street in the MF District, the same district as St. Vincent, serves dinner every Friday night and breakfast every Sunday morning  It provides a food pantry through its Norwich Clergy Association from which individuals can pick up food items for consumption at their homes once per month.

78.     Upon information and belief, First Haitian Baptist Church, located at 356 Central Ave. and in the MF District, operates a food pantry from which families with children can pick up food items.  In 2005, the Commission approved First Haitian Baptist Church's special permit application to operate a church at this location.  Upon information and belief, Defendants required nothing from it regarding its operation of the food pantry.

79.     Upon information and belief, St. Peter and Paul Church, located at 181 Elizabeth St. and in the MF District, the same district as St. Vincent, operates a food pantry from which individuals referred from a social service agency can pick up food items.

80.     Upon information and belief, other religious institutions in other districts in the City, including residential districts, provide services similar to those provided by St. Vincent.

81.     Upon information and belief, Lee Memorial United Methodist Church, located at 294 Washington Street in the R-40 Residence District serves lunch to the homeless, poor, and needy.

82.     Upon information and belief, Tabernacle Deliverance and Praise Ministries, located at 230 Hunters Road and in the R-40, Residence District, operates or did operate a food pantry from which individuals can pick up food items.

83.     Upon information and belief, the United Congregational Church located at 87 Broadway in the Chelsea Central District (the "CC District"), provides meals to the homeless, poor, and needy.

84.     Upon information and belief, the Salvation Army located at 262 Main Street in the CC District, provides meals to the homeless, poor, and needy.  It also operates a food pantry from which individuals can pick up food items.

85.     Upon information and belief, Catholic Charities, Diocese of Norwich, Inc., located at 331 Main St. and in the CC District, operates a food pantry from which families with children can pick up food items.

86.     Upon information and belief, Family Church of God, located at 63 Church St. and in the CC District, operates a food pantry from which families with children can pick up food items.

87.     Upon information and belief, Defendants have treated St. Vincent on less than equal terms in their application of land use regulation, as compared to nonreligious assemblies and institutions in the City.

88.    Upon information and belief, Madonna Place, located at 240-248 Main St. and in the CC District, operates a food pantry from which families with children can pick up food items.

89.    The Commission's denial of the Application substantially burdens and prevents Plaintiffs from the free exercise of religion.  The City, through the actions of the Commission, has rendered Plaintiffs' religious exercise impracticable.

90.    The harm to St. Vincent caused by Defendants' laws and actions, which prevents Plaintiffs from freely exercising their religion, is immediate and severe.

91.    St. Vincent has no adequate remedy at law for the harm and damaged caused by Defendants' wrongful laws and actions.

92.    This action is ripe for review.  Seeking any other permits or approvals from the City would be an act of futility.

93.    Plaintiffs are likely to succeed on the merits of this action, which merits are more particularly described below.

**Plaintiffs Will Suffer Immediate and Irreparable Injury**

94.    The impact of the Decision will be devastating and immediate.  St. Vincent's temporary permit is set to expire January 13, 2013.  The Decision, which was rendered on December 18, 2012, has left St. Vincent with less than one month to find somewhere else to go.  However, there is nowhere else to go.  St. Vincent has explored properties throughout the City to relocate, but there are no ready and feasible alternatives.  The Decision will force St. Vincent to cease operating altogether.  For this reason, the Plaintiffs will be deprived of freely exercising their religious beliefs

**COUNT I**

**Violation of Religious Land Use and Institutionalized
Persons Act – "Substantial Burden"
42 U.S.C. § 2000cc(a)**

95.    Paragraphs 1 through  94 are incorporated by reference as if set forth fully herein.

96.    Congress requires that the Court construe RLUIPA "in favor of broad protection of religious exercise, to the maximum extent permitted by the terms of [RLUIPA] and the Constitution." 42 U.S.C. § 2000cc-3(g).

97.    If not enjoined, the Decision will leave St. Vincent with no ready and feasible alternative to perpetuate the mission of the Diocese and continue its existence; at best, St. Vincent will undergo substantial delay, uncertainty, and expense to one day continue its existence elsewhere.

98.    The Decision is arbitrary, irrational, and bears no substantial relation to the public health, safety, and welfare.

99.    With no ready alternatives, the Decision will prohibit St. Vincent's operation, coercing it, its patrons, the Church, and the Diocese not only into modifying their religious conduct, but precluding them entirely from continuing such religious exercise.

100.    By imposing and implementing the City's land use and zoning laws in this manner, and by the conduct described above, Defendants have imposed and will continue to impose a substantial burden on the religious exercise of St. Vincent in violation of 42 U.S.C. § 2000cc(a)(1).

101.    The imposition of this substantial burden on the religious exercise of Plaintiffs by Defendants is not in furtherance of a compelling governmental interest, nor is it the least restrictive means of furthering a compelling governmental interest, as required by 42 U.S.C. § 2000cc(a)(1).

102.    This substantial burden on the religious exercise of St. Vincent is imposed by Defendants in the implementation of a system of land use regulations under which Defendants make, and have in place formal and informal procedures or practices that permit them to make individualized assessments of proposed land uses, as contemplated by 42 U.S.C. § 2000cc(a)(2)(C).

103.    The substantial burden on the religious exercise of St. Vincent will affect commerce among the several states, as contemplated by 42 U.S.C. § 2000cc(a)(2)(B).

104.    The substantial burden on the religious exercise of St. Vincent is imposed on a program or activity that receives Federal financial assistance, as contemplated by 42 U.S.C. § 2000cc(a)(2)(A).

### Relief Requested

105.    By virtue of the foregoing conduct, Defendants have violated Plaintiffs' rights under 42 U.S.C. § 2000cc(a), and Plaintiffs are accordingly entitled to such relief as the Court finds to be appropriate, including but not limited to, a declaration that the denial of St. Vincent's special permit application is void, invalid, and unconstitutional, temporary, preliminary, and permanent injunctive relief to enjoin Defendants from preventing St. Vincent from continuing to operate at the Property based on the Commission's denial of the special permit application, an extension of the temporary certificate of occupancy, as permitted under the original six-month

approval, an extension from the City to allow the State to continue its accessibility exemption for

St. Vincent's operation, compensatory damages, and attorneys' fees and costs, pursuant to 42.

U.S.C. § 1988.

## COUNT II

### Violation of Religious Land Use and Institutionalized Persons Act – "Nondiscrimination" 42 U.S.C. § 2000cc(b)(2)

106.    Paragraphs 1 through 105 are incorporated by reference as if set forth fully

herein.

107.    By imposing and implementing the City's land use and zoning laws and

regulations in the manner described above, and by the conduct described above, Defendants are

treating St. Vincent on less than equal terms with comparable and similarly situated religious

institutions, which institutions Defendants freely permit to engage in the similar practice of

providing free meals, food items, and other charitable services to the homeless, poor, and needy.

Such conduct has deprived and will continue to deprive Plaintiffs of their right to the free

exercise of religion.

### Relief Requested

108.    By virtue of the foregoing conduct, Defendants have violated Plaintiffs' rights

under 42 U.S.C. § 2000cc(b), and Plaintiffs are accordingly entitled to such relief as the Court

finds to be appropriate, including but not limited to, a declaration that the denial of St. Vincent's

special permit application is void, invalid, and unconstitutional, temporary, preliminary, and

permanent injunctive relief to enjoin Defendants from preventing St. Vincent from continuing to

operate at the Property based on the Commission's denial of the special permit application, an extension of the temporary certificate of occupancy, as permitted under the original six-month approval, an extension from the City to allow the State to continue its accessibility exemption for St. Vincent's operation, compensatory damages, and attorneys' fees and costs, pursuant to 42. U.S.C. § 1988.

## COUNT III

### Violation of Religious Land Use and Institutionalized Persons Act – "Equal Terms" 42 U.S.C. § 2000cc(b)(1)

109.    Paragraphs 1 through 108 are incorporated by reference as if set forth fully herein. By imposing and implementing the City's land use and zoning laws and regulations in the manner described above, and by the conduct described above, Defendants are treating Plaintiffs on less than equal terms with comparable and similarly situated nonreligious institutions, which institutions Defendants freely permit to engage in the similar practices of providing free meals, food items, and other charitable services to the homeless, poor, and needy.  Such conduct has deprived and continues to deprive Plaintiffs of their right to the free exercise of religion.

#### Relief Requested

110.    By virtue of the foregoing conduct, Defendants have violated Plaintiffs' rights under 42 U.S.C. § 2000cc(b), and Plaintiffs are accordingly entitled to such relief as the Court finds to be appropriate, including but not limited to, a declaration that the denial of St. Vincent's special permit application is void, invalid, and unconstitutional, temporary, preliminary, and permanent injunctive relief to enjoin Defendants from preventing St. Vincent from continuing to

operate at the Property based on the Commission's denial of the special permit application, an extension of the temporary certificate of occupancy, as permitted under the original six-month approval, an extension from the City to allow the State to continue its accessibility exemption for St. Vincent's operation, compensatory damages, and attorneys' fees and costs, pursuant to 42. U.S.C. § 1988.

## COUNT IV

**United States Constitution**
**42 U.S.C. § 1983: First Amendment**
**Free Exercise of Religion**

111.    Paragraphs 1 through 110 are incorporated by reference as if set forth fully herein.

112.    Defendants have deprived and continue to deprive Plaintiffs of their right to the free exercise of religion, as secured by the First Amendment to the United States Constitution, as made applicable to the States by the Fourteenth Amendment, by imposing and implementing the City's land use and zoning laws and regulations in the manner described above, and by the conduct described above.

113.    Defendants' implementation, imposition, and application of the City's land use laws and regulations is not neutral and generally applicable, but instead discriminates unfairly against Plaintiffs.

114.    Defendants have imposed a substantial burden on Plaintiffs' free exercise of religion without any compelling reason, and without using the least restrictive means, including but not limited to granting a special permit with reasonable conditions as provided for by § 8-3c of the Connecticut General Statutes.

115. Defendants have imposed a substantial burden on Plaintiffs' free exercise of religion without any rational basis.

116. By singling out Plaintiffs for unequal, adverse treatment, and bowing to pressure from neighborhood opponents, Defendants have deprived Plaintiffs of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, without limitation, the right to free exercise of religion guaranteed by the First and Fourteenth Amendments to the United States Constitution.

117. Defendants, acting through and in concert with each other, under the color of law and in their respective official positions, and in furtherance of a custom or policy of the City, have deprived Plaintiffs of their constitutionally protected rights, which has caused Plaintiffs immediate and irreparable injury.

**Relief Requested**

118. Plaintiffs are accordingly entitled to such relief as the Court finds to be appropriate, including but not limited to a declaration that the denial of St. Vincent's special permit application is void, invalid, and unconstitutional, temporary, preliminary, and permanent injunctive relief to enjoin Defendants from preventing St. Vincent from continuing to operate at the Property based on the Commission's denial of the special permit application, an extension of the temporary certificate of occupancy, as permitted under the original six-month approval, an extension from the City to allow the State to continue its accessibility exemption for St. Vincent's operation, compensatory damages, and attorneys' fees and costs, pursuant to 42. U.S.C. § 1988.

## COUNT V

**United States Constitution**
**42 U.S.C. § 1983: Fourteenth Amendment**
**Equal Protection**

119.    Paragraphs 1 through 118 are incorporated by reference as if set forth fully herein.

120.    Plaintiffs are protected by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

121.    Defendants have arbitrarily and selectively interpreted and enforced the Zoning Regulations and land use laws, and have singled out Plaintiffs for arbitrary and selective enforcement by denying St. Vincent's special permit application to operate at the Property and providing services and programs substantially similar to those that the City permits other similarly situated religious institutions to conduct.

122.    Defendants have arbitrarily and selectively interpreted and enforced the Zoning Regulations and land use laws, and have singled out St. Vincent for arbitrary and selective enforcement by denying its special permit application to operate at the Property and providing services and programs substantially similar to those that the City permits other similarly situated nonreligious institutions to conduct.

123.    This differential treatment was based on impermissible considerations, including baseless community opposition to St. Vincent, the nature of Plaintiffs' religious beliefs, and the bad faith attempt to harm St. Vincent's ability to operate from the Property.

124.    By singling out Plaintiffs for unequal, adverse treatment, and bowing to the pressure from neighborhood opponents, Defendants have deprived and continue to deprive Plaintiffs of their rights, remedies, privileges, and immunities guaranteed to every citizen of the

United States, in violation of 42 U.S.C. § 1983, including, without limitation, the right to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.

**Relief Requested**

125.    Plaintiffs are accordingly entitled to such relief as the Court finds to be appropriate, including but not limited to a declaration that the denial of St. Vincent's special permit application is void, invalid, and unconstitutional, temporary, preliminary, and permanent injunctive relief to enjoin Defendants from preventing St. Vincent from continuing to operate at the Property based on the Commission's denial of the special permit application, an extension of the temporary certificate of occupancy, as permitted under the original six-month approval, an extension from the City to allow the State to continue its accessibility exemption for St. Vincent's operation, compensatory damages, and attorneys' fees and costs, pursuant to 42. U.S.C. § 1988..

**COUNT VI**

**United States Constitution**
**42 U.S.C. § 1983: First and Fourteenth Amendments**
**Prior Restraint**

126.    Paragraphs 1 through 125  are incorporated by reference as if set forth fully herein.

127.    The standards set forth in the City's Zoning Regulations governing special permit applications and the standards applied by the Commission in reviewing and denying St. Vincent's special permit application did not provide Plaintiffs, as persons of ordinary

intelligence, a reasonable opportunity to understand whether such land uses are permitted or prohibited and, as such, constitutes an unconstitutional prior restraint on St. Vincent's protected expression and religious exercise under the First Amendment. Such standards unconstitutionally afford the Commission unbridled discretion, as applied, in its review of St. Vincent's special permit application.

128.    By singling out Plaintiffs for unequal, adverse treatment, and bowing to the pressure from neighborhood opponents, Defendants have deprived and continue to deprive Plaintiffs of their rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, without limitation, the right to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.

## Relief Requested

129.    Plaintiffs are accordingly entitled to such relief as the Court finds to be appropriate, including but not limited to a declaration that the standards set forth in the City's Zoning Regulations governing special permit application in the MF District, as applied by the Commission in reviewing and denying St. Vincent's Application, are an unconstitutional prior restraint on protected expression and religious exercise under the First Amendment, temporary, preliminary, and permanent injunctive relief to enjoin Defendants from preventing St. Vincent from continuing to operate at the Property based on the Commission's denial of the special permit application, an extension of the temporary certificate of occupancy, as permitted under the original six-month approval, an extension from the City to allow the State to continue its

accessibility exemption for St. Vincent's operation, compensatory damages, and attorneys' fees and costs, pursuant to 42. U.S.C. § 1988.


## COUNT VII

### Connecticut General Statutes
### Section 8-8

130.     Paragraphs 1 through 109, 112, 115-119, 124-27 are incorporated by reference as if set forth fully

herein.

131.     Legal Notice of the Decision was published in *Norwich Bulletin* on December 21, 2012.

132.     A letter was received from the Commission setting forth as the only reason for denial: "[c]hange of use is not harmonious with a residential neighborhood."

133.     Under Connecticut law, a court need not and does not look beyond the reasons given by the collective decision of the Commission.

134.     As the property owner and applicant, Plaintiffs are statutorily and classically aggrieved by the Decision for purposes of taking this appeal because they have specific, personal, and legal interests in the Decision and their interests are specially and injuriously affected by the Decision.

135.     The Commission's action in denying St. Vincent's special permit application was

illegal, unlawful, arbitrary, capricious, contrary to the substantial evidence in the record, and in abuse of the powers vested in the Commission under the statutes of the State of Connecticut and the Zoning Regulations for one or more of the following reasons:

     a.  The Commission denied the application despite the fact that the proposal complied with all substantive requirements of the applicable Zoning Regulations;

     b.  The Commission improperly credited anecdotal and lay testimony of neighbors over expert and other testimony and evidence provided by or on behalf of St. Vincent; and

     c.  The Commission improperly applied the special permit criteria of the Zoning Regulations; and

     d.  The Commission's denial of the application is not supported by substantial evidence in the record.

**Relief Requested**

136.   Plaintiffs pray that the Court: (a) sustain the appeal and render judgment in favor of Plaintiffs; (b) based upon the law and the administrative record, reverse the Decision and direct the Commission to approve the special permit; (c) in the alternative, vacate the special permit denial and remand to the Commission for further proceedings to address the defects set forth above; (d) award costs as provided by § 8-8(l) of the General Statutes; (e) temporarily restrain Defendants from preventing St. Vincent's operation at the Property due to the denial of the special permit until adjudication on the merits of this action pursuant to § 8-8(h); (f) grant such other relief as in law or equity may apply.

## COUNT VIII

### Connecticut Religious Freedom Act
### Connecticut General Statutes § 52-571b

137.    Paragraphs 1 through 136 are incorporated by reference as if set forth fully

herein.

138.    Plaintiffs are a "class of one" and are protected by the Equal Protection Clause of

the Fourteenth Amendment to the United States Constitution.

139.    Defendants have deprived and continue to deprive St. Vincent of its right to the

free exercise of religion, as secured by Connecticut General Statutes § 52-571b, by imposing and

implementing a land use regulation that discriminates against St. Vincent on the basis of its

religious beliefs and burdens St. Vincent's religious exercise in a manner that neither furthers a

compelling governmental interest nor uses the least restrictive means to achieve any interest.

### Relief Requested

140.    Plaintiffs are accordingly entitled to such relief as the Court finds to be

appropriate, including but not limited to a declaration that the denial of St. Vincent's special

permit application is void, invalid, and unconstitutional, temporary, preliminary, and permanent

injunctive relief to enjoin Defendants from preventing St. Vincent from continuing to operate at

the Property based on the Commission's denial of the special permit application, compensatory

damages, and attorneys' fees and costs.

## COUNT IX

### Connecticut State Constitution
### Article I § 3
### Freedom of Worship; Religious Liberty

141.    Paragraphs 1 through 140 are incorporated by reference as if set forth fully herein.

142.    Defendants have deprived and continue to deprive Plaintiffs of their right to freedom of worship and religious liberty, as secured by Article I, § 3 of the Connecticut Constitution by imposing and implementing the City's land use and zoning laws and regulations in the manner described above, and by the conduct described above.

143.    Defendants have caused, and continue to cause, Plaintiffs to suffer irreparable harm.

#### Relief Requested

144.    Plaintiffs are accordingly entitled to such relief as the Court finds to be appropriate, including but not limited to a declaration that the denial of St. Vincent's special permit application is void, invalid, and unconstitutional, temporary, preliminary, and permanent injunctive relief to enjoin Defendants from preventing St. Vincent from continuing to operate at the Property based on the Commission's denial of the special permit application, an extension of the temporary certificate of occupancy, as permitted under the original six-month approval, an extension from the City to allow the State to continue its accessibility exemption for St. Vincent's operation, compensatory damages, all costs and disbursements, and such other further relief as the Court deems equitable, just, and proper.

## COUNT X

**Connecticut State Constitution
Article I § 5
Equal Protection of Laws**

145.    Paragraphs 1 through 144 are incorporated by reference as if set forth fully herein.

146.    Defendants have arbitrarily and selectively interpreted and enforced the Zoning Regulations and land use laws, and have singled out Plaintiffs for arbitrary and selective enforcement by denying St. Vincent's special permit application to operate at the Property and providing services and programs substantially similar to those that the City permits other similarly situated religious institutions to conduct.

147.    Defendants have arbitrarily and selectively interpreted and enforced the Zoning Regulations and land use laws, and have singled out St. Vincent for arbitrary and selective enforcement by denying its special permit application to operate at the Property and providing services and programs substantially similar to those that the City permits other similarly situated nonreligious institutions to conduct.

148.    By singling out Plaintiffs for unequal, adverse treatment, and bowing to the pressure from neighborhood opponents, Defendants have deprived and continue to deprive Plaintiffs of their rights, remedies, privileges, and immunities guaranteed to every citizen of the State of Connecticut, in violation of Article I, § 5 of the Connecticut Constitution, including, without limitation, the right to equal protection of the laws.

**Relief Requested**

149.    Plaintiffs are accordingly entitled to such relief as the Court finds to be

appropriate, including but not limited to a declaration that the denial of St. Vincent's special

permit application is void, invalid, and unconstitutional, temporary, preliminary, and permanent

injunctive relief to enjoin Defendants from preventing St. Vincent from continuing to operate at

the Property based on the Commission's denial of the special permit application, an extension

from the City to allow the State to continue its accessibility exemption for St. Vincent's

operation, compensatory damages, all costs and disbursements, and such other further relief as

the Court deems equitable, just, and proper.


PLAINTIFFS,
ST. VINCENT DE PAUL PLACE,
NORWICH, INC. AND THE ST.
JOSEPH'S POLISH ROMAN
CATHOLIC CONGREGATION


By_____
Brian R. Smith (ct00484)
Timothy D. Bates (ct06132)
Evan J. Seeman (ct28546)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
E-mail: bsmith@rc.com

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Jillian Corbin, on behalf of Plaintiff, St. Vincent de Paul

Place, Norwich, Inc., verify under penalty of perjury that the foregoing statements in Plaintiffs'

Complaint are true and correct to the best of my knowledge, information, and belief, except as to

those allegations which are stated to be based on information and belief, which are based

thereon.

_____

Jillian Corbin

Subscribed and sworn to
before me this 4th day
of January, 2013.

_____
Notary Public
Commission of Superior Court
NUALA E. DRONEY

- 36 -

# EXHIBIT A



# CITY OF NORWICH
# ZONING PERMIT

**7/9/12**
_____
**Date Issued**

**Z#12-160**
_____
**Permit Number**

**Location of Property:** _Clairmont Ave._

**Property Owner:** _St. Joseph's POL RC Cong._

**Applicant:** _Jillian Corbin_

**Zoning District:** _Multifamily (MF)_

**Tax Map:** _102_     **Block:** _05_     **Lot:** _74_

**Permitted Activity:** _✱ Conversion of 8,500 sq.ft._
_from school Cafeteria non/profit/_
_eleemosynary use (Soup kitchen)_

**Issuing Official:** _F.L. Lewis_
_____          **Zoning Enforcement Officer**

_✱Six month Temporary use only. Must apply for special permit beyond six months._

_IF APPLICABLE, CONSTRUCTION MAY NOT PROCEED UNTIL A BUILDING PERMIT HAS BEEN OBTAINED_

_THIS PERMIT MUST BE PROMINENTLY POSTED ON THE PREMISES DURING CONSTRUCTION_

_While not mandatory, Applicant may publish Notice of this approval as per Public Act No. 03-144_

_el   ee   mos   y   nary_



# CITY OF NORWICH, CONNECTICUT

## DEPARTMENT OF PLANNING & DEVELOPMENT

### BUILDING INSPECTION DIVISION

July 13, 2012

Ms. Jillian Corbin
Executive Director
St. Vincent De Paul Place
120 Cliff Street
Norwich, CT  06360

Re:    St. Joseph's School
       Soup Kitchen Relocation, Norwich, CT

Dear Ms. Corbin:

You have been issued a Temporary Certificate of Occupancy allowing you to operate at Saint Joseph's school for a period not to exceed six months.

The decision not to require accessibility from Daniel Tierney, Deputy State Building Official (letter dated June 19, 2012) applies only to the former school cafeteria located in the lower level (basement) area.

I think that Mr. Tierney looks at this area as always having been an "assembly" area independent from the "E" educational use of the remainder of the structure. Earlier building codes did not identify "accessory" or "incidental" uses as part of the primary use of the structure. Therefore, although Building Department records do not specifically identify the cafeteria as a separate "assembly" use area, if we consider the cafeteria to be a separate occupancy clarification and it continues to be used in the same manner, then I agree that accessibility upgrades normally required by a change of occupancy do not apply. Mr. Tierney's interpretation may also apply to permanent use of the basement area. The zoning permit issued is clearly limited to temporary use of the space and additional approval must be obtained to allow permanent occupancy.

However, use of the upper floors remains a definite change of occupancy from what was clearly an "E" educational use. You are hereby instructed to apply for a permit for any proposed use of the upper levels (including a food pantry).

**23 Union Street, Norwich, Connecticut  06360**
**Phone: (860) 823-3745 • Fax: (860) 823-3741**

## City of Norwich Connecticut – Building Inspection Division  - Page 2 of 2

Per Section 107.2, 2003 IBC :  Temporary uses shall conform to the structural strength, fire safety, means of egress, accessibility, light, ventilation and sanitary requirements of this code…

A separate accessibility modification must be applied for and granted, or the pantry area must be made accessible.  The storage of food is to be looked at as an S-2 occupancy and specific code requirements apply.  Other office use of the upper floors would be considered "B" business and permits must be obtained prior to occupancy.

As of this date, you do not have permission to use the upper floors for any occupancies other than educational.   Please obtain building permits for all proposed alterations to the Soup Kitchen area.

If you have any questions, please do not hesitate to contact me.

Respectfully,

James K. Troeger
Building Official

CC:      Fire Marshal
         City Manager
         Director of Planning and Neighborhood Services



**STATE OF CONNECTICUT**
*DEPARTMENT OF CONSTRUCTION SERVICES*
Office of the State Building Inspector



August 6, 2012

Jillian Corbin, Executive Director
St. Vincent de Paul Place
10 Railroad Place
Norwich, CT 06360

RE: **W-43-12**    **St. Joseph School**
                    **Clairmont Avenue**
                    **Norwich, Connecticut**

Dear Ms. Corbin:

I have reviewed the above-referenced request for accessibility exemption from the provisions of Section 1103.1, of the 2003 International Building Code portion of the 2005 State Building Code, together with James D. McGaughey, Executive Director of the Office of Protection and Advocacy for Persons with Disabilities. (Mr. McGaughey's letter is enclosed).

It is our joint decision to approve this accessibility exemption, as requested, that proposes to occupy two former classrooms for storage/food pantry purposes on the first floor. This approval is temporary and shall not exceed six months from the date of issuance of the temporary certificate of occupancy. This decision is based on the fact that full compliance with the State Building Code has been determined to be not feasible.

If you have any questions, please contact Daniel Veronick, of my office, at (860) 685-8310.

Very truly yours,

Daniel Tierney
Deputy State Building Inspector

DT:DV:pm
Enclosure
cc:   James McGaughey
      James Troeger, Norwich Building Official